Filed 12/23/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G059731 |
|      v. | (Super. Ct. No. C-95992) |
| NOKKUWA KENYA ERVIN, | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
|    Defendant and Appellant. | |
| In re NOKKUWA KENYA ERVIN | G060135 |
|    on Habeas Corpus. | (Super. Ct. No. M-18878) |

This court hereby orders that the opinion filed herein on November 30, 2021, be modified as follows:

1. On page 1, second paragraph, first sentence, delete the words "State Interim."

This modification does not change the judgement.

MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


MARKS, J.*


*Judge of the Orange County Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/30/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G059731 |
|       v. | (Super. Ct. No. C-95992) |
| NOKKUWA KENYA ERVIN, | O P I N I O N |
|     Defendant and Appellant. | |
| In re NOKKUWA KENYA ERVIN | G060135 |
|     on Habeas Corpus. | (Super. Ct. No. M-18878) |

Appeal and petition for writ of habeas corpus following an order of the Superior Court of Orange County, Elizabeth G. Macias, Cheri T. Pham and Jean H. Rheinheimer (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), Judges. Reversed and remanded. Petition denied.

Martin F. Schwarz, State Interim Public Defender, and Miles David Jessup, Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

"Murder is the unlawful killing of a human being . . . with malice aforethought."  (Pen. Code, § 187, subd. (a).)[1]  But under the former felony-murder rule, any participant in a robbery could be liable for murder without a finding of malice if someone was killed during the robbery.  (See CALCRIM No. 540A ["A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent"].)

In 1991, petitioner Nokkuwa Kenya Ervin and other perpetrators committed an armed robbery of a store.  During the robbery, one of the perpetrators shot and killed an innocent victim.  A jury found Ervin guilty of burglary, robbery, and murder.  The jury found true two sentencing allegations that Ervin personally used a firearm as to the burglary and the robbery counts.  The jury found not true a sentencing allegation that Ervin personally used a firearm as to the murder count.  The jury also found true two felony-murder special-circumstance allegations.  The judgment was affirmed on appeal.  (*People v. Ervin* (June 18, 1996, G016849) [nonpub. opn.] (*Ervin I*).)

In 2019, the Legislature limited the scope of the felony-murder rule.  Under the current rule, if a victim is killed during a designated felony, a defendant cannot be found guilty of murder unless he was 1) the actual killer, 2) aided and abetted the actual killer with the intent to kill, or 3) was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e)(1)-(3).)

Ervin filed a petition for resentencing; Ervin averred he could no longer be convicted of murder.  (§ 1170.95.)  The trial court initially found Ervin established a prima facie basis for relief, issued an order to show cause (OSC), and set an evidentiary hearing.  But the court later revoked the OSC and summarily denied the petition.  The court ruled the felony-murder special-circumstance findings precluded Ervin from obtaining relief under section 1170.95 as a matter of law.

---

[1] Further undesignated statutory references are to the Penal Code.

However, the trial court's ruling was made prior to the Supreme Court's ruling in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  In *Lewis*, the Court clarified the guidelines for section 1170.95 petitions.  The Court emphasized "the 'prima facie bar was intentionally and correctly set very low.'  [¶]  In sum, the parties can, and should, use the record of conviction to aid the trial court in *reliably* assessing whether a petitioner has made a prima facie case for relief . . . ."  (*Lewis*, at p. 972, italics added.)

Here, in this de novo review, we find Ervin's section 1170.95 petition reliably meets the "very low" prima facie threshold for relief.  (See *Lewis*, *supra*, 11 Cal.5th at p. 972.)  Further, we conclude the trial court erred when it denied Ervin's section 1170.95 petition based solely on the existence of the two felony-murder special-circumstance findings.  (See *People v. Arias* (2021) 66 Cal.App.5th 987, 1004 (*Arias*), review granted Sept. 29, 2021, S270555 ["we conclude the trial court in the present case erred to the extent it summarily denied [defendant's] resentencing petition based solely on the existence of a true felony-murder special-circumstance finding"].)

Thus, we reverse the trial court's summary denial of Ervin's section 1170.95 petition.  On remand, we order the trial court to issue an OSC and to conduct an evidentiary hearing.

## I

## STATEMENT OF FACTS AND THE CASE

The following facts are taken from this court's unpublished opinion following Ervin's 1993 jury trial.  (*Ervin I*, *supra*, G016849.)

"This appeal is . . . from three separately-tried defendants facing charges from an armed robbery of a COMP USA store in Fountain Valley in 1991.  In the course of the robbery, a woman -- the mother of one of the store's employees who had arrived on the scene to pick up her son -- was shot and killed.  The crime became the focus of a

great deal of publicity after the prosecution's main witness was allegedly murdered by one of the gang members just before the initial joint trial date. . . .

"At Ervin's trial, the following evidence was adduced:

"Dana Rankin, an employee of COMP USA in Fountain Valley, approached a nicely attired, young black man browsing in the store a few minutes before closing time on October 18,1991. He was later identified to be the defendant, Nokkuwa Ervin, who said he was merely looking and did not need help.

"Another young employee, Peter Lee, assisted in closing the store and waited inside the store for his mother to pick him up about an hour later. Suddenly, Ervin stood next to him with a gun muzzle against Lee's head. Ervin told him he would blow his head off if he moved. At Ervin's order, Lee got on the floor, placed his hands behind his back to be cuffed and lay motionless. Ervin demanded to know if there were any other employees in the store; Lee told him there were two others in the cash room.

"Ervin proceeded to the cash room where he handcuffed the two employees, William Doehr and Arlen Nydam, after he threatened to kill them with the gun. He then forced them out of the cash room and joined them up with Lee, where he emptied all three men's pockets. [Fn. omitted.] Upon finding a set of keys on Doehr, he grabbed them, learned that Doehr was the manager and demanded to know what each key opened. He then flippantly told them that they would probably get worker's compensation and maybe a vacation out of this as they could complain about the stress of being robbed. He appeared quite cool, calm and collected. He seemed to be very clear on the planned robbery as he ignored everything from their pockets except the store's keys.

"Ervin then corralled them into the restroom where he cuffed them to the handicap railing. He left, returning a few minutes later at a run, and asked them how to work the back loading door. Leaving again, the three men heard a woman scream and

4

then a bang. Ervin reappeared, but this time his gun hand was shaking, and he seemed nervous, asking if an alarm had gone off.

"Quite fortuitously, a Fountain Valley police officer, Raymond Rakitis, was passing in his patrol car when he heard the shot. Pulling into the parking lot he saw a silver BMW backing out of the parking area next to the loading dock. Two black men occupied the driver and front passenger seats. As the car pulled away, Ervin came running from the side of the building towards the car, grabbing the driver's window and trying to pull himself inside through it. He failed to gain entry but managed to run around to the passenger door as the car turned to drive away. He again attempted to gain a foothold, but the car sped away from his grasp. Rakitis ordered him down, but he failed to stop until the officer released his police dog. At that point Ervin prostrated himself on the ground as the officer directed. A .38 caliber revolver was found in his pocket with a single expended shell casing in a cylinder chamber. All other chambers were vacant.

"Kathy Lee, mother of Peter, lay in a pool of her own blood, next to the rear wheel of her car parked not far from the loading door. She had been shot in the head at point blank range: The contact wound was fatal, with gunshot residue in and around, the entry point. The fatal bullet was fired from Ervin's revolver.

"An examination of Ervin's right glove revealed two microscopic particles of gunshot residue. As he was placed in the patrol car, Ervin overheard a report of the 'possible 187.' [Fn. omitted.] Ervin exclaimed, 'No! Not a 187; don't die lady!'

"At trial, Ervin testified that he did not shoot Kathy Lee; he was there against his will and under fear that two gang members of the West Side Rolling Sixties faction of the Crips Gang (Crips) would either kill him or his family if he failed to do as they ordered. He obeyed them when they told him to hide himself inside this particular store that night until after closing time, and then order the remaining employees at gunpoint into the restroom. Once this was accomplished, he was to open the loading door and help the waiting gangsters load equipment from the store into their car. That

5

night, he did as he was ordered, but when he opened the loading door, the 'leader' -- who Ervin failed to ever name -- took the gun from him before sending him back inside. Suddenly, a shot rang out; Ervin ran to the door to see Kathy on the ground and the gun lying beside her. He picked it up and put it in his pocket, fearing the gang leader's anger if he failed to retrieve and return it.

"At the same moment, he noticed the silver BMW start to back out carrying two black men. He suspected they were gang members and ran to get into the car. But the driver pushed him out and locked the doors, leaving him to be arrested by Rakitis. He conceded he gave two separate statements to the police which were nothing but lies. In one of them, he 'confessed' to his earlier participation in an almost-identical robbery of a COMP USA in Culver City. His testimony at trial, however, was that he knew nothing about such a crime except what the unnamed gang leader had told him to say in the event he got arrested. In another statement, he told the police he shot Kathy Lee himself. But what he meant to say was that he was waving the gun at her, and it went off accidentally. But even that was not the truth; it was what the leader told him to say to the officers in order to mislead them. Ervin also denied gang membership, admitting only to such reasonable fear of the deadly Crips as to do whatever they ordered. [Fn. omitted.]

"Los Angeles police officer, Kraig Seltzer, testified that he detained Ervin in July 1988 at which time Ervin proudly proclaimed his membership in the 'Roiling Forties' faction of the Crips. The day following his arrest for the Fountain Valley robbery, Ervin admitted to the officers that he committed this crime and that he shot Kathy Lee. He denied being afraid of anyone including gang members. He also admitted committing an almost-identical crime of a COMP USA store in Culver City as well. In that earlier robbery, he used the very same gun, the same suit, and the same modus operandi, including cuffing the employees to the railing in the restroom. However, none of the witnesses from that crime identified him when shown a photographic lineup." (*Ervin I*, *supra*, G016849.)

6

*Trial Court Proceedings*

The jury found Ervin guilty of burglary, robbery, and first degree murder. (§§ 187, subd. (a), 459, 211.) The jury further found true allegations Ervin personally used a firearm as to the robbery and burglary counts; the jury did not find true an allegation Ervin personally used a firearm as to the murder charge. (§ 12022.5, subd. (a).) The jury also found true a burglary-murder special-circumstance allegation and a robbery-murder special-circumstance allegation. (§ 190.2, subd. (a)(17)(A) & (G).)

Ervin filed a motion for new trial on several grounds. Attached to the motion were declarations from 10 of the trial jurors. The jurors generally averred under penalty of perjury Ervin did not shoot the murder victim, Ervin did not have the intent to kill, and/or those facts were not proven beyond a reasonable doubt. What follows are some statements from the 10 affidavits:

"I feel that Nokkuwa Ervin did not shoot Kathy C. Lee." "I feel he had no intent or shared intent to shoot Kathy C. Lee." "I feel his version in court was the real version of events." "Jury instruction pages 49 and 50 [the felony-murder special-circumstance instructions] were not addressed in the jury room." "I do not believe that Nokkuwa Ervin shot Kathy C. Lee." "I do not believe Nokkuwa Ervin had any intent to shoot Kathy C. Lee or anyone else." "The jury did not discuss pages 49 and 50 due to a misunderstanding of the Felony Murder Law." "I do not believe Nokkuwa Ervin had any intent to kill or to aid in killing anyone." "I believe that based on the evidence Nokkuwa Ervin's version of the events is closer to the truth than the version put forth by the prosecution." "I feel [Ervin] was telling the truth about the events that occurred when the victim was killed." "We never really addressed the Special Circumstances part of the verdict, pages 49 & 50." "I feel that there is reasonable doubt that Nokkuwa Ervin was the person who shot and killed Kathy C. Lee." "I feel that there is reasonable doubt that Nokkuwa Ervin did share in any intent to kill Kathy C. Lee." "I think that Nokkuwa

7

Ervin killed Kathy Lee but no one saw the actual shooting therefore there is reasonable doubt."

The trial court struck all the juror affidavits because "the mental processes of the jurors are not to be received by affidavits as they've been presented here." The court denied the motion for new trial and then sentenced Ervin to life in prison without the possibility of parole, plus 10 years.

*Unpublished Appellate Opinion*

On appeal, Ervin argued the trial court: erred in admitting other crimes evidence, erred in its instruction on the defense of duress, improperly denied his motion for new trial, and committed various sentencing errors. This court affirmed the judgment in all aspects. (*Ervin I*, *supra*, G016849.)

As to the new trial motion, this court held: "Ervin raises the specter of juror misconduct by arguing that the trial court erred when it refused to admit some juror declarations in the motion for new trial. He asserts that certain jurors had signed declarations saying that one or more had, in their deliberations, concluded that Ervin did not commit the crime of murder, i.e., he did not harbor any intent to kill." (*Ervin I*, *supra*, G016849.) The appellate opinion noted that long-standing law "bars the admission of juror declarations reflecting any influence contributing to the verdict. Verdicts cannot be attacked on such a basis, and it does not matter, contrary to Ervin's allegations, that there may be more than one juror declaring the same thing." (*Ibid*.)

This court commented: "We merely note in passing that felony murder, by its very definition, does not entail an express intent to kill. The intent which the felon must be shown to have is only the intent to commit the underlying felony; the murderous intent is then 'imported.' [Citations.] It is truly irrelevant that some jurors expressed an

opinion that Ervin was not the one who pulled the trigger on Kathy Lee." [2] (*Ervin I*, *supra*, G016849.)

*Section 1170.95 Proceedings*

In October 2019, Ervin filed a section 1170.95 petition for dismissal of his murder conviction and resentencing. The trial court appointed counsel.

In December 2019, the prosecution filed a response to Ervin's petition. The response included copies of documents from the underlying record of conviction: the grand jury indictment, the verdict forms, the unpublished appellate opinion, selected jury instructions, and the closing arguments.

In October 2020, after receiving further briefing from both parties, the trial court found Ervin made a prima facie showing under section 1170.95 and issued an OSC. The court analyzed the issue, in part, as follows:

"And in this case what we have are affidavits in the petition, which the court taking guidance from the number of cases that interpret the application of 1170.95, that the court is to consider what has been filed, and if part of the petition is true unless otherwise proven by the record of conviction, there is a question in terms of what the jury found based upon the instructions that were given to them and specifically the verdicts that they rendered, which was that he didn't personally use a firearm.

"The fact that they subsequently prepared these affidavits or signed these affidavits unbeknownst to them that Mr. Ervin would be seeking relief under 1170.95, I don't think there's a question of whether they are trustworthy, I think the interests of justice requires that the court consider those affidavits.

---

[2] As to the former felony-murder rule, the identity of the person who pulled the trigger was "truly irrelevant." However, this comment is no longer true under the current felony-murder rule, nor was this comment true as to the felony-murder special circumstances, which resulted in Ervin receiving a life sentence without the possibility of parole.

"Therefore, the court finds that given its review, Mr. Ervin has demonstrated, given the standard . . . -- which is a low standard -- to find a prima facie showing and order a hearing to show cause that Mr. Ervin has demonstrated that he falls within the statute and that he is entitled to relief."

In November 2020, the trial court reversed its prior ruling. The court vacated the OSC and summarily denied Ervin's section 1170.95 petition. The court held: "By finding the robbery and burglary special circumstances true beyond a reasonable doubt, based on the instructions it was given, the jury necessarily made the factual finding that petitioner participated in the robbery and burglary with the intent to kill the victim or that he was the actual killer. Either of these findings would allow petitioner to be convicted of first degree murder . . . ." As far as the affidavits, the court held: "It does not appear from the statute that a petitioner may provide 'new and additional evidence' prior to the OSC being issued."

Ervin filed a notice of appeal from the trial court's summary denial of the section 1170.95 petition. Ervin also filed a petition for writ of habeas corpus in this court, which we later consolidated with the direct appeal.


II

DISCUSSION

Ervin argues his section 1170.95 petition meets the prima facie threshold for granting relief; therefore, the trial court erred by not issuing an OSC and setting the matter for an evidentiary hearing. We agree.

The trial court denied Ervin's "petition at the first stage of prima facie review under section 1170.95, subdivision (c). A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

10

In this part of the discussion, we shall: A) review general principles of law regarding section 1170.95 petitions; B) summarize the relevant portions of Ervin's record of conviction; and C) analyze the law as applied to the facts.

*A. Principles of Law Regarding Section 1170.95 Petitions*

Generally, a person may be liable for a crime either as a direct perpetrator or as an aider and abettor. (§ 31.) A person can be held liable for crimes that were intentionally aided and abetted (target offenses); a person can also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the """natural and probable consequences" doctrine.'" (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) As a result, the Legislature amended sections 188 (defining malice), and 189 (defining the degrees of murder).

The Legislature also added section 1170.95, which provides a procedure for a person convicted under a now invalid murder theory to file a petition for relief. If the court determines the petitioner has made a prima facie showing, it must issue an OSC. (§ 1170.95, subd. (c).) If the parties do not stipulate petitioner is entitled to relief, the court must hold an evidentiary hearing. If the prosecution fails to prove petitioner's ineligibility for relief beyond a reasonable doubt, the court must vacate petitioner's murder conviction and resentence accordingly. (§ 1170.95, subd. (d).)

11

"The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with *potential merit* from those that are clearly meritless.  This is consistent with the statute's overall purpose:  to ensure that murder culpability is commensurate with a person's actions, while also ensuring that *clearly meritless* petitions can be efficiently addressed as part of a single-step prima facie review process."  (*Lewis*, *supra*, 11 Cal.5th at p. 971, italics added.)

The record of conviction may include the underlying facts as summarized in an appellate opinion.  (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 800; *Lewis*, *supra*, 11 Cal.5th at p. 972 ["the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers'"].)  The record of conviction may also include admissible trial evidence (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063), the court's instructions to the jurors (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1084), and the parties' closing arguments (*People v. White* (2014) 223 Cal.App.4th 512, 525).

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

"While the trial court may look at the record of conviction . . . , the prima facie inquiry under [section 1170.95,] subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

12

*B. Ervin's Record of Conviction*

During Ervin's trial, the court instructed the jury on two theories of first degree murder: a premeditated and deliberate murder, and the former felony-murder rule (the court did not instruct on the natural and probable consequences doctrine).

The court instructed the jury: "To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." (CALJIC No. 8.20.)

As far as the first degree felony-murder rule, the court instructed: "The unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs [during the commission or attempted commission of the crime] . . . is murder of the first degree when the perpetrator had the specific intent to commit such crime." (CALJIC No. 8.21.) "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime . . . , all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental." (CALJIC No. 8.27.)

The prosecution argued to the jury, in relevant part, as follows:

"Ladies and gentlemen, there is only one way in this particular case for you to find the defendant not guilty. There is only one way for to you find him guilty of anything less than first degree felony murder, and that is if you believe his version of the events lock stock and barrel."

"It's time for you as members of the community to say we are not going to keep the lie going anymore. We are going to impose liability. We are going to say that

13

you did this, Mr. Ervin, *you shot Mrs. Lee during the commission of a robbery and burglary*, because . . . your version doesn't make any sense. It's unreasonable and it makes no sense." (Italics added.)

"There can be a few people on premeditation and deliberation, but . . . the most likely case scenario, ladies and gentlemen, based on the facts of this case is *felony murder* in the first degree." (Italics added.)

The jury found Ervin guilty of burglary, robbery, and murder in the first degree; the verdict did not specify the theory of murder liability (a premeditated and deliberate murder, or the former felony-murder rule). The jury found true an allegation that Ervin personally used a firearm as to the burglary and robbery counts, but it did not find true that Ervin personally used a firearm as to the first degree murder count.

### C. Analysis and Application

In Ervin's section 1170.95 petition, he averred: "I was convicted of 1st degree felony murder and I could not now be convicted because of changes to Penal Code § 189, effective January 1, 2019, for the following reasons . . . . [¶] I was not the actual killer. [¶] I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. [¶] I was not a major participant in the felony, or I did not act with reckless indifference to human life during the course of the crime or felony."

In this de novo review, under the test for prima facie evidence, we must accept Ervin's allegations as true. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.) Here, the record of conviction supports Ervin's averments in his petition because—despite the prosecution's theory of the case (Ervin shot and killed the victim)—the jury did not find Ervin personally used a firearm in the commission of the murder. Ervin's section 1170.95 petition has "potential merit" because the jury potentially found Ervin guilty of

14

murder as an aider and abettor under the former first degree felony-murder rule, which is now an invalid theory of murder liability. (See § 189.)

Thus, we find the trial erred by summarily denying Ervin's section 1170.95 petition. On remand, we order the trial court to issue an OSC and to conduct an evidentiary hearing, as provided for in the statute. (See § 1170.95, subd. (e).)[3]

The Attorney General concedes "at first glance" Ervin's petition "set forth a prima facie case for relief." However, the Attorney General argues the jury's true findings on the felony-murder special-circumstance allegations categorically preclude Ervin from obtaining relief under section 1170.95 as a matter of law.

We disagree. Based on the underlying record of conviction, we cannot assume the jury's true finding on the felony-murder special-circumstance allegations categorically precludes Ervin from obtaining relief under section 1170.95 as a matter of law. (See *Arias*, *supra*, 66 Cal.App.5th at p. 1004 [based on the defendant's record of conviction "felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95"].)

In the remainder of the discussion, we will analyze: 1) the felony-murder special-circumstance sentencing enhancement; 2) the trial court's jury instructions; 3) the prosecutor's closing arguments; and 4) the jury's verdicts.

*1. The Felony-Murder Special-Circumstance Sentencing Enhancement*

The felony-murder special-circumstance sentencing enhancement provides: "Unless an intent to kill is specifically required . . . , an actual killer, . . . need not have had any intent to kill at the time of the commission of the offense which is the basis of

---

[3] We are not relying on the juror affidavits because they were not part of the record of conviction (they were not admitted into evidence). (See *People v. Blakely*, *supra*, 225 Cal.App.4th at p. 1063.) In this appeal, we need not address whether the juror affidavits would be admissible at the evidentiary hearing on remand.

15

the special circumstance . . . ." (§ 190.2, subd. (b).) "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists *any actor* in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole . . . ." (§ 190.2, subd. (c), italics added.) "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a [designated] felony . . . which results in the death of some person . . . , and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole . . . ." (§ 190.2, subd. (d).)

Under the felony-murder special circumstance, there is no mens rea requirement for the actual killer. (§ 190.2, subd. (d).) But as to aiders and abettors, there are both actus reus and mens rea requirements: a direct aider and abettor with the intent to kill, or a major participation in the underlying felony with reckless indifference to human life. (§ 190.2, subds. (c) & (d); see *In re Scoggins* (2020) 9 Cal.5th 667, 674.)

A felony-murder special-circumstance finding does not categorically bar a petitioner from making a prima facie showing of entitlement to relief under section 1170.95 as a matter of law. (*Arias*, *supra*, 66 Cal.App.5th at p. 1004.) In *Arias*, defendant was convicted of first degree murder as an aider and abettor under three liability theories: a felony-murder theory, the natural and probable consequences theory, and a conspiracy theory. (*Id*. at pp. 995-996.) The jury also found true a felony-murder special-circumstance allegation that the murder was committed during the commission of a robbery. (*Id*. at p. 991.) Years later, the trial court denied defendant's section 1170.95 petition. The Court of Appeal reversed: "we conclude the trial court in the present case erred to the extent it summarily denied Arias's resentencing petition based solely on the existence of a true felony-murder special-circumstance finding." (*Id*. at p. 1004.)

16

The *Arias* court noted that following defendant's convictions, the California Supreme Court had subsequently modified the standards regarding the felony-murder special-circumstance sentencing enhancements. (*Arias*, *supra*, 66 Cal.App.5th at pp. 1002-1003, citing *People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).) The *Arias* court held "given the limited record of conviction before us, we are unable to conclude the special-circumstance finding satisfied the standards set forth in *Banks* and *Clark*."[4] (*Arias*, at p. 991.)

In a section 1170.95 petition, the petitioner must show he or she: "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Arias*, *supra*, 66 Cal.App.5th at p. 997.)

Effective January 1, 2019, the Legislature limited the scope of the first degree felony-murder rule: "A participant in the perpetration or attempted perpetration of a [designated] felony . . . in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *the actual killer* in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).)

The long-standing felony-murder special-circumstance sentencing enhancement under section 190.2, and the current first degree felony-murder rule under section 189, are similar in their descriptions, but they are not identical. The felony-

---

[4] Interestingly, William Clark was the ringleader of the 1991 CompUSA robbery and the driver of the silver BMW. (*Clark*, *supra*, 63 Cal.4th at p. 535.) Clark was convicted of the innocent victim's murder, as well as the murder of a person that "had testified to a grand jury about defendant's involvement in the CompUSA murder [who] was going to testify against defendant at his trial." The Supreme Court vacated the felony-murder special circumstances, but otherwise affirmed Clark's death penalty (there were multiple murder, murder-for-hire, and other special-circumstance findings). (*Id*. at pp. 534-535.)

murder special circumstance generally requires the jury to find a defendant aided and abetted "*any actor* in the commission of murder in the first degree," while the current felony-murder rule more specifically requires the jury to find a defendant aided and abetted "*the actual killer* in the commission of murder in the first degree." (Compare §§ 190.2, subd. (c), 189, subd. (e)(2), italics added.)

In most cases, this distinction would likely not matter. But based on the entire record of conviction—to include the trial court's 1993 jury instructions, the prosecution's closing argument, and the jury's inconsistent verdicts—we cannot find the jury's true findings on the felony-murder special-circumstance allegations categorically preclude Ervin from obtaining relief under section 1170.95 as a matter of law.

### 2. *The Jury Instructions*

"If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." (*People v. Smithey* (1999) 20 Cal.4th 936, 963.) In making this determination, we consider the challenged language "'in the context of the instructions as a whole and the trial record.'" (*People v. Reliford* (2003) 29 Cal.4th 1007, 1013.)

In this case, as we have already reviewed, the trial court instructed the jury on the former (now defunct), first degree felony-murder rule. The court also instructed the jury on the two felony-murder special-circumstance allegations as follows:

"*If you find [the] defendant in this case guilty of murder of the first degree*, you must then determine if . . . the following special circumstance[s]: [are] true or not true: (1) It is further alleged that the murder of Kathy C. Lee was committed by said defendant, NOKKUWA KENYA ERVIN, while the defendant was engaged in the commission of the crime of burglary . . . . It is further alleged that the murder of Kathy C. Lee was committed by said defendant . . . , while the defendant was engaged in the commission of the crime of robbery, or attempted robbery . . . .

18

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

"[If you find beyond a reasonable doubt that the defendant was [either the actual killer or an aider or abettor, but you are unable to decide which], then you must also find beyond a reasonable doubt that the defendant intended *either to kill a human being or to aid another in the killing of a human being* in order to find the special circumstance to be true.] [On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true.]" (CALJIC No. 8.80, italics added.)[5]

Here, the jurors were instructed *if* they found Ervin guilty of first degree murder *then*—and only then—were they to determine whether the two felony-murder special-circumstance allegations were true (or not). However, because the jury did not find Ervin to be the actual shooter, the jury potentially (perhaps likely) found Ervin guilty of first degree murder as an aider and abettor under the former first degree felony-murder rule—a legal theory that is no longer valid—rather than the first degree premeditation and deliberation theory. In other words, if Ervin were hypothetically tried under the current first degree felony-murder rule—and the jury similarly did not find Ervin to be the actual shooter—then the jury potentially would never have even reached the issue as to whether the two alleged felony-murder special-circumstance allegations were proven true beyond a reasonable doubt or not "because of changes to Section[s] 188 or 189 made effective January 1, 2019." (*Arias*, *supra*, 66 Cal.App.5th at p. 997.)

_____

[5] The jury was not instructed on a third basis for a felony-murder special-circumstance allegation: the defendant was a major participant in the underlying felony with reckless indifference for human life. Thus, it is unnecessary for this court to consider the viability of that basis of the felony-murder special-circumstance allegations in this appeal. (Compare *Arias*, *supra*, 66 Cal.App.5th at p. 997.)

Thus, due to the conditional wording of the 1993 felony-murder special-circumstance instruction, and the jury's not true finding on the personal use of a weapon enhancement (as to the murder), we cannot assume the jury's true findings on the felony-murder special-circumstance allegations categorically preclude Ervin from obtaining relief under section 1170.95 as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 952.)

Further, the trial court's 1993 felony-murder special-circumstance instruction was also arguably ambiguous (if it is now purportedly to be used for the purpose of explaining the current first degree felony-murder rule under section 189).

Again, the special circumstance instruction used by the trial court in 1993 told the jurors if they could not decide whether Ervin was the actual killer or an aider and abettor, then they needed to "find beyond a reasonable doubt that the defendant intended either to kill a human being or to aid *another in the killing of a human being* in order to find the special circumstance to be true." (CALJIC No. 8.80, italics added.)

Understandably, the 1993 jury instruction does not precisely mirror the wording of the current first degree felony-murder rule. Now, in order to find a defendant guilty of murder as an aider and abettor under the first degree felony-murder rule, the jury needs to find the defendant "was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *the actual killer* in the commission of murder in the first degree." (§ 189, subd. (e)(2), italics added.)

As we shall explain further, given the prosecutor's closing argument and the jury's inconsistent verdicts, it is possible the jurors misinterpreted the 1993 instruction to mean they could find the felony-murder special-circumstance allegation true if they generally found Ervin aided and abetted *another* in the commission of the robbery or burglary (that ultimately led to the killing of a human being), rather than a more specific finding that Ervin aided and abetted "the actual killer . . . with the intent to kill." (See § 189, subd. (e)(2).)

20

### 3. The Prosecutor's Closing Argument

"If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." (*People v. Smithey*, *supra*, 20 Cal.4th at p. 963.) In particular, we "must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

In 1993, during closing argument, the prosecutor stated, in part:

"To commit the robbery, burglary, attempted robbery, or burglary, and the commission of such crime must be proved beyond a reasonable doubt. Again, the word robbery is inserted in here, ladies and gentlemen. If you can use robbery and burglary and both the attempts, the special circumstances finding you'll find in the verdict packet right after verdicts as to count 1, is marked as a special circumstance. *To find the special circumstance allegation true*, ladies and gentlemen, to refer to in these instructions as murder in the commission of robbery, burglary, and the attempts, *it must be proved it was committed, the murder was committed while the defendant was engaged in the commission of one of those particular crimes.* The murder was committed in order to carry out the commission of the robbery.

"This language here will not be applicable in this particular case. You must find basically, ladies and gentlemen, that the robbery was not merely incidental to the commission of the murder. *All that comes down to, ladies and gentlemen, if you find a robbery happened, if you find that a burglary happened and somebody was killed during the commission of it, that's all that matters as far as the special circumstance finding.*" (Italics added.)

"There can be a few people on premeditation and deliberation, but . . . the most likely case scenario, ladies and gentlemen, based on the facts of this case is felony murder in the first degree. I'd ask for you to *return special circumstances* of robbery and burglary, burglary. *He entered with the intent to steal. That's it.*" (Italics added.)

21

Again, the Attorney General is arguing in this appeal that the two special circumstance allegations categorically establish— as a matter of law under section 1170.95—that the jury found either: 1) Ervin was the actual killer, or 2) Ervin aided and abetted the actual killer with the intent to kill. (See § 189.)

But as we have already discussed, the trial court's 1993 jury instruction did not (understandably) convey the precise wording of the current version of the first degree felony-murder rule to the jury. Further, while the prosecutor accurately explained the complex legal theories to the jury in most aspects, on at least three occasions the prosecutor appeared to conflate the felony-murder special-circumstance allegation with the former felony-murder rule. Based on the prosecutor's arguments, in part, the jurors may have potentially misunderstood the jury instructions to mean that they could find the felony-murder special-circumstance allegations true if they simply found Ervin guilty of murder under the former (now defunct) felony-murder rule. (See *Lewis*, *supra*, 11 Cal.5th at p. 971, italics added, ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with *potential merit* from those that are clearly meritless"].)

Thus, the prosecutor's closing argument supports our conclusion that we cannot reliably find the jury's true findings on the felony-murder special-circumstance allegations categorically establish Ervin is ineligible for relief under section 1170.95 as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 972 ["In reviewing any part of the record of conviction at this preliminary [prima facie] juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"].) Our conclusion is further supported by the jury's inconsistent verdicts.

*4. The Jury's Verdicts*

Generally, a jury's inconsistent verdicts are permitted if the guilty verdict or the true finding on a sentencing allegation is supported by substantial evidence. (See

22

*People v. Bell* (2020) 48 Cal.App.5th 1, 9-10.)  "For example, 'if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, *effect is given to both*.'"  (*People v. Avila* (2006) 38 Cal.4th 491, 600, italics added.)

"It is possible that the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.'  [Citation.]  Thus, if a defendant is *given the benefit of an acquittal on the count on which he was acquitted*, 'it is neither irrational nor illogical' to require him to accept the burden of conviction on the count on which the jury convicted."  (*People v. Avila*, *supra*, 38 Cal.4th at p. 600, italics added.)

Here, under the rules for inconsistent verdicts, the jury's not true finding on the firearm enhancement does not negate its true findings on the felony-murder special-circumstance allegations; to be sure, there was substantial evidence Ervin was the actual shooter.  The jury could have found Ervin to be the actual shooter when determining the truth of the felony-murder special-circumstance allegation, but because of "'mistake, compromise, or lenity'" found Ervin not to be the actual shooter when determining the truth of the firearm enhancement.  (See *People v. Avila*, *supra*, 38 Cal.4th at p. 600.)

However, if effect is also to be given to the jury's not true finding on the firearm enhancement, then there does not appear to be any evidence Ervin "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *the actual killer* in the commission of murder in the first degree."  (§ 189, subd. (e)(2), italics added.)

Again, in this case the store employees heard a single shot being fired while they were confined inside the store, and the officer who arrived on the scene did not see the actual shooting.  And as far as Ervin's statements, he alternatively claimed at the time of his arrest he shot the victim, but while testifying at trial he claimed he was inside of the store when the shooting occurred.  In short, at least at this stage, there appears to be no direct or circumstantial evidence (beyond mere conjecture) that Ervin aided and abetted *one of the other robbers* in the shooting of the innocent victim.  In any event, "'a

23

court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

In sum, given the entire record of conviction, we cannot conclude the jury's true findings as to the felony-murder special-circumstance allegations categorically preclude Ervin from obtaining relief under section 1170.95 as a matter of law.[6] (See *Lewis*, *supra*, 11 Cal.5th 952.) Thus, having established a prima facie basis for relief, Ervin is entitled to an evidentiary hearing. (See § 1170.95, subd. (d).)

---

[6] In Ervin's consolidated petition for a writ of habeas corpus, he asks this court to "issue an order vacating the true finding for the special circumstances finding . . . and enter a not true finding . . . ." However, we are holding that the jury's true findings on the two special circumstances do not categorically bar Ervin from obtaining relief under section 1170.95. Therefore, an order vacating the two special circumstance findings is not necessary to resolve the relevant issues on appeal. Consequently, we are denying Ervin's petition for a writ of habeas corpus without prejudice.

IV

DISPOSITION

The trial court's order denying the resentencing petition is reversed.  On remand, the court is ordered to issue an OSC and to conduct an evidentiary hearing. Petition denied.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


MARKS, J.*


*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.